# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-2564
_____

Mark One Electric Company, Inc.

*Plaintiff - Appellant*

SK Design Group, Inc.

*Plaintiff*

v.

City of Kansas City, Missouri; Andrea Dorch

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: June 14, 2022
Filed: August 15, 2022
_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

In 2020, Kansas City began restricting participation in its Minority Business Enterprises and Women's Business Enterprises Program to those entities whose owners satisfied a personal net worth limitation. Mark One Electric Co., a woman-

owned business whose owner's personal net worth exceeds the limit, appeals the dismissal of its lawsuit challenging the Kansas City Program as unconstitutional because of the personal net worth limitation. Under our precedent, the Program's personal net worth limitation is a valid narrow tailoring measure, and we therefore affirm.

## I.

### A.

Since 1996, Kansas City has maintained a Minority Business Enterprises (MBE) and Women's Business Enterprises (WBE) Program to encourage utilization of small business enterprises owned and controlled by minorities and women as subcontractors on certain city contracts in response to the impact of discrimination against MBEs and WBEs. To be certified as an MBE or WBE in the Program, an entity must satisfy various criteria: (1) be at least 51 percent owned, managed, and independently controlled by one or more minorities or women; (2) have a real and substantial presence in the Kansas City metropolitan area; (3) meet business size standards imposed by the federal Small Business Administration, see 13 C.F.R. § 121.201;[1] (4) perform a commercially useful function; and (5) be certified by the City's civil rights and equal opportunity department. See Kan. City, Mo. Code of General Ordinances ch. 3, art. IV, § 3-421(a)(34), (47) (2021). Additionally, an entity "must demonstrate by written documentation or affidavit that it has suffered from past race or gender discrimination in the city and in the applicable trade or industry." Id. § 3-461(b).

In 2016, the City conducted a disparity study to determine whether the MBE/WBE Program followed best practices for affirmative action programs and

---

[1]The standards in 13 C.F.R. § 121.201 provide size limits for eligibility by industry, based on either sales volume or number of employees.

whether the Program would survive constitutional scrutiny. The 2016 Disparity Study analyzed data from 2008 to 2013 and provided quantitative and qualitative evidence of race and gender discrimination. It concluded that the City had a compelling interest in continuing the program because "minorities and women continue to suffer discriminatory barriers to full and fair access to [Kansas City] and private sector contracts." The study also provided recommendations to ensure the program would be narrowly tailored, including: lengthening the recertification period for MBEs and WBEs; eliminating the one-year-in-business requirement; certifying firms as both an MBE and WBE (instead of one or the other); eliminating a 45-day waiting period between certification and city contract solicitation; and adding a personal net worth limitation like the net worth cap in the United States Department of Transportation (USDOT) Disadvantaged Business Enterprise (DBE) program.

The City enacted a new version of the MBE/WBE Program based on the 2016 Disparity Study on October 25, 2018.[2] The amended Program incorporated a personal net worth limitation, as recommended, which would require an entity to establish that its "owner's or, for businesses with multiple owners, each individual owner's personal net worth is equal to or less than the permissible personal net worth amount determined by the U.S. Department of Transportation to be applicable to its DBE program." See Kan. City, Mo. Code of General Ordinances ch. 3, art. IV, § 3-421(a)(34), (47) (2021). Personal net worth is defined as:

> The net value of the assets of an individual after total liabilities is deducted. An individual's personal net worth does not include the individual's ownership interest in a certified [MBE]/WBE or applicant for such certification or the individual's equity, if any, in his or her primary place of residence. An individual's personal net worth includes

---

[2]The current version of the MBE/WBE Program will expire on December 1, 2022, unless a new disparity study is undertaken prior to that date.

only his or her share of assets held individually or jointly with the individual's spouse.

Id. § 3-421(a)(36). The personal net worth limitation for the USDOT DBE Program is presently $1.32 million and includes consideration of assets transferred to be held in trust.[3] 49 C.F.R. § 26.67. As part of the certification process, an enterprise must show in writing that its owner's or owners' personal net worth is equal to or less than the applicable limit. Kan. City, Mo. Code of General Ordinances ch. 3, art. IV § 3-461(c) (2021).

The personal net worth limitation was originally set to take effect on October 1, 2019, with certified MBEs and WBEs required to submit documentation by August 1, 2019, but the City did not enforce the requirement immediately and later voted to delay implementation one year.[4] The personal net worth limitation became effective on October 1, 2020, and remains in effect.

B.

On October 2, 2020, the day after the personal net worth limitation took effect, Mark One Electric initiated an action against the City under 42 U.S.C. § 1983,

---

[3]The definition of "personal net worth" made effective October 1, 2020, did not include trust assets, but the City announced it would consider assets held in trust when calculating net worth. Count 3 of Mark One's complaint asserted that the City's announcement was contrary to the plain language of the ordinance. On February 18, 2021, however, the City passed Ordinance No. 210129, which changed the definition of "personal net worth" to include assets held in trust, rendering Count 3 moot and not at issue on appeal.

[4]Meanwhile, during the delay in implementation, the Program was challenged as unconstitutional on the basis that it was not narrowly tailored because the City had not enforced the personal net worth limitation. See Staco Elec. Constr. Co. v. City of Kansas City, No. 20-165, 2021 WL 918764 (W.D. Mo. Mar. 10, 2021). The parties in that lawsuit subsequently filed a joint stipulation of dismissal.

challenging the personal net worth limitation.[5]  Mark One had been certified as a WBE since 1996, but based on the new personal net worth threshold, it would lose its certification despite otherwise meeting the requirements of the WBE Program. Mark One acknowledged that, based on the 2016 Disparity Study, there was a strong basis in evidence for the City to take remedial action, but alleged the study's recommendation that the City consider adding a personal net worth limitation was not supported by either qualitative or quantitative analysis.  Mark One claimed that the personal net worth limitation is not narrowly tailored to remedy past discrimination and that the program as a whole is not narrowly tailored because of the personal net worth limitation.  Mark One asserted, "[T]he City has adopted an arbitrary and capricious re-definition of who qualifies as a women [sic] or minority and seeks to remedy a discrimination of which there is no evidence."  According to Mark One, the personal net worth limitation is "not specifically and narrowly framed to accomplish the city's purpose," and therefore the program is unconstitutional.

The district court[6] denied Mark One's motion for a temporary restraining order to stop enforcement of the personal net worth limitation, finding that it failed to demonstrate a likelihood of success on the merits.  Mark One then moved for a preliminary injunction on November 20, 2020, which the district court denied on January 11, 2021, again finding that Mark One had not shown a likelihood of success on the merits.

On February 17, 2021, the City moved to dismiss the complaint, arguing that the personal net worth limitation is a valid measure to narrowly tailor the MBE/WBE program.  Mark One responded that the operative complaint alleged sufficient facts to state a claim under § 1983 and the case should proceed to discovery.  The district court granted the City's motion, finding that the personal net worth limitation was

---

[5]A second plaintiff, SK Design Group, Inc., a minority-owned business, joined the suit at the district court but did not join this appeal.

[6]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

permissible as a matter of law. Mark One timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

Race-based affirmative action programs designed to remediate the effects of discrimination toward minority-owned subcontractors, such as Kansas City's, are subject to strict scrutiny, meaning that the program is constitutional "only if [it is] narrowly tailored to further compelling governmental interests." Sherbrooke Turf, Inc. v. Minn. Dep't of Transp., 345 F.3d 964, 968–69 (8th Cir. 2003) (quoting Grutter v. Bollinger, 539 U.S. 306, 326 (2003)). Although Mark One is a woman-owned business and not a minority-owned business, neither party contests review of the Program under the strictest scrutiny. Cf. id. (applying strict scrutiny to race- and gender-based program). We review de novo the district court's grant of the City's motion to dismiss, accepting the facts alleged as true and drawing all reasonable inferences in favor of the plaintiff. Jacobson Warehouse Co. v. Schnuck Mkts., Inc., 13 F.4th 659, 668 (8th Cir. 2021).

"To survive strict scrutiny, the government must first articulate a legislative goal that is properly considered a compelling government interest," such as stopping perpetuation of racial discrimination and remediating the effects of past discrimination in government contracting. Sherbrooke Turf, 345 F.3d at 969. The City must "demonstrate a 'strong basis in the evidence' supporting its conclusion that race-based remedial action [is] necessary to further that interest." Id. (citing City of Richmond v. J.A. Croson Co., 488 U.S. 469, 500 (1989)). Mark One does not dispute that the City has a compelling interest in remedying the effects of race and gender discrimination on City contract opportunities for minority- and women-owned businesses. And Mark One has conceded the 2016 Disparity Study provides a strong basis in evidence for the MBE/WBE Program to further that interest.

Second, the City's program must be narrowly tailored, which requires that "the means chosen to accomplish the government's asserted purpose are specifically

-6-

and narrowly framed to accomplish that purpose." Id. at 971 (cleaned up) (quoting Grutter, 539 U.S. at 333). The plaintiff has the burden to establish that an affirmative action program is not narrowly tailored. Id. "In determining whether a race-conscious remedy is narrowly tailored, we look at factors such as the efficacy of alternative remedies, the flexibility and duration of the race-conscious remedy, the relationship of the numerical goals to the relevant labor market, and the impact of the remedy on third parties." Id. (citing United States v. Paradise, 480 U.S. 149, 171, 187 (1987)); see also Adarand Constructors, Inc. v. Slater, 228 F.3d 1147, 1177–78 (10th Cir. 2000) (listing narrow-tailoring factors of "(1) the availability of race-neutral alternative remedies; (2) limits on the duration of the . . . DBE certification programs; (3) flexibility; (4) numerical proportionality; (5) the burden on third parties; and (6) over- or under-inclusiveness").

Mark One attacks the personal net worth limitation from two angles. Mark One first argues that the personal net worth limitation in the City's Program should be independently assessed under strict scrutiny, separately from the Program as a whole, and asks the court to find the provision unenforceable through the Program's severability clause. Under strict scrutiny, Mark One argues, the personal net worth limitation is unconstitutional in its own right because it was implemented by the City without a strong basis in evidence and excludes a subset of women and minorities based on a classification unrelated to the discrimination MBEs and WBEs face. But Mark One offers no authority for the premise that an individual narrow tailoring measure which differentiates between individuals or businesses based on a non-suspect classification, such as net worth, is subject to strict scrutiny in isolation. See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 22–29 (1973); U.S. R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 175 (1980) (reviewing policy based on economic status for a rational basis). The MBE/WBE Program as a whole must be premised on a strong basis in evidence under strict scrutiny review. But the City is not required to provide a separate individual strong basis in evidence for the personal

net worth limitation because this limitation, on its own, is subject only to rational basis review.

Mark One also challenges the overall narrow tailoring of the MBE/WBE Program, claiming that the personal net worth limitation makes the Program unconstitutional because it excludes MBEs and WBEs that have experienced discrimination. Under our precedent, this argument is unavailing. We have previously found the USDOT DBE personal net worth limitation—the limitation the City adopted for the Program—to be a valid narrow tailoring measure that ensures flexibility in an affirmative action program and reduces the impact on third parties by introducing a race- and gender-neutral requirement for eligibility. See Sherbrooke Turf, 345 F.3d at 972–73 (finding the federal DBE program narrowly tailored on its face in part because "wealthy minority owners and wealthy minority-owned firms are excluded" through the personal net worth limitation, so "race is made relevant in the program, but it is not a determinative factor"). Mark One has not plausibly alleged that the $1.32 million personal net worth limitation in the City's MBE/WBE Program is different, or serves a distinguishable purpose, from the personal net worth limitation in the federal program such that it is not likewise a valid narrow tailoring measure here.

Mark One claims that its exclusion from the Program despite its status as a woman-owned business shows that the Program is unlawful. We do not minimize the fact that individuals and businesses may experience race- and gender-based discrimination in the marketplace regardless of wealth, as the 2016 Disparity Study itself suggests. It does not escape notice that a minority- or women-owned enterprise may be excluded from the Program based solely on the owner's personal net worth, despite having experienced discrimination in its trade or industry and regardless of the revenue of the enterprise itself or the financial status of any of its minority and

women employees. Indeed, Mark One has declared that it has suffered past discrimination, as the Program requires for certification.

But the City does not have a constitutional obligation to make its Program as broad as may be legally permissible, so long as it directs its resources in a rational manner not motivated by a discriminatory purpose. Cf. Jana-Rock Constr., Inc. v. N.Y. State Dep't of Econ. Dev., 438 F.3d 195, 206 (2d Cir. 2006) ("In adopting an affirmative action plan [a city] may rationally limit its application to those minority groups in the local work force that are most in need of remedial efforts." (quotation omitted)). Though Mark One argues that the personal net worth limitation is "arbitrary and capricious because the city *chose to discriminate against* the very minorities and women its [MBE]/WBE Program was designed to help," there is no allegation in the operative complaint that the City was motivated by a discriminatory purpose when it implemented the personal net worth limitation.

The City's MBE/WBE Program may very well survive strict scrutiny without the personal net worth limitation. But under Sherbrooke Turf, 345 F.3d at 972-73, the City may choose to add this limitation in its Program as a rational, race- and gender-neutral narrow tailoring measure.

The judgment of the district court is affirmed.

_____

-9-